# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHONG SOOK LIM,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>COUNTY OF TULARE; UNKNOWN PUBLIC EMPLOYEE 1; and UNKNOWN PUBLIC EMPLOYEE 2,<br><br>　　　　Defendants. | CASE NO. 1:20-cv-01049-NONE-SKO<br><br>**FIRST SCREENING ORDER**<br><br>**(Doc. 1)**<br><br>**21-DAY DEADLINE** |

## I.   INTRODUCTION

### A.   Background

On July 30, 2020, Plaintiff Chong Sook Lim, proceeding pro se, filed a civil rights action pursuant to 42 U.S.C. § 1983 ("Section 1983") against the County of Tulare (the "County") and two unknown "officer[s], agent[s], and/or employee[s]" of the County. (Doc. 1 ("Compl.").) Plaintiff also filed an application to proceed *in forma pauperis*, which was granted on July 31, 2020. (Docs. 2 & 3.)

Plaintiff's complaint is now before the Court for screening. As discussed below, Plaintiff's allegations are insufficient to plead a cognizable claim under Section 1983. Plaintiff is granted leave to file a first amended complaint and is provided the pleading requirements and legal standards under which her claims will be analyzed.

### B. Screening Requirement and Standard

In cases where the plaintiff is proceeding *in forma pauperis*, the Court is required to screen each case, and shall dismiss the case at any time if the Court determines that the allegation of poverty is untrue, or the action or appeal is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2). If the Court determines that a complaint fails to state a claim, leave to amend may be granted to the extent that the deficiencies of the complaint can be cured by amendment. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc).

The Court's screening of a complaint under 28 U.S.C. § 1915(e)(2) is governed by the following standards. A complaint may be dismissed as a matter of law for failure to state a claim for two reasons: (1) lack of a cognizable legal theory; or (2) insufficient facts under a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). Plaintiff must allege a minimum factual and legal basis for each claim that is sufficient to give each defendant fair notice of what plaintiff's claims are and the grounds upon which they rest. *See, e.g., Brazil v. U.S. Dep't of the Navy*, 66 F.3d 193, 199 (9th Cir. 1995); *McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

### C. Summary of the Complaint

Plaintiff, who is of Korean descent and has limited ability to communicate in English, met Dennis Ennslin through an online dating site for Mormons. (Compl. ¶ 12.) Plaintiff and Mr. Ennslin were married and lived together for five months prior to separating. (*Id.* ¶ 13.) Their brief marriage yielded a child, Y.L., and the couple divorced in 2014. (*Id.*)

Plaintiff alleges that in 2014, Mr. Ennslin placed false report to the Tulare County Health & Human Services Agency ("HHSA") that Plaintiff was physically abusing her 14-year-old daughter. (Compl. ¶ 14.) This, according to Plaintiff, "set off a chain of HHSA encounters" in 2014, 2015, 2017, and 2018, none of which resulted in the initiation of a juvenile dependency hearing. (*Id.* ¶ 15.) Plaintiff alleges that during these encounters the HHSA "denied Plaintiff the services of an interpreter and failed to make reasonable efforts to ascertain whether Plaintiff needed the services of an interpreter," having provided an interpreter only once. (*Id.* ¶¶ 16–17.)

1    Plaintiff further alleges that in 2017 she took Y.L. to a hospital, having noticed while bathing
2 the child that her vagina was swollen. (Compl. ¶ 18.) According to Plaintiff, the hospital doctor
3 contacted the police and a report was made to HHSA. (*Id*.) Plaintiff alleges on July 15, 2018, she
4 took Y.L. to be examined for another vaginal irritation. (*Id*. ¶ 21.) As a result of the examination,
5 the physician assistant contacted HHSA and made a report of suspected child abuse. (*Id*.)

6    Plaintiff alleges on July 30, 2018, Plaintiff and Mr. Ennslin appeared at a family court
7 hearing, at which Plaintiff was shown "a report sent to the family court judge by HHSA," which is
8 "part of the 'confidential' portion of the family court case file." (Compl. ¶ 22.) According to
9 Plaintiff, the report "contained a chock full of lies and omissions of known exculpatory facts,"
10 including that Y.L. was "coached to make statements indicating she was suffering from child abuse"
11 and that Plaintiff tried to kill Mr. Ennslin, and the report "contained a request for custody orders."
12 (*Id*. ¶ 23.) Plaintiff alleges that the two unknown HHSA employees named as defendants signed the
13 report and sent the report to the family court knowing that the report "would be presented as
14 evidence and relied upon" by the court. (*Id*. ¶ 23–24.)

15    According to Plaintiff, on September 6, 2018, the family court held a hearing, at which the
16 court awarded "full legal and full physical custody" of Y.L. to Mr. Ennslin, and permitted Plaintiff
17 to have once-a-week two hour supervised visits with Y.L. for two hours. (Compl. ¶ 25.) Plaintiff
18 alleges that she has not seen Y.L. since March 6, 2019, because the "supervised visitation provider
19 closed down" and she is now "limited to virtual visits." (*Id*.) Plaintiff alleges that the family court
20 "reviewed and relied on the misrepresentations and requested custody orders" contained in the report
21 provided by HHSA in making its decisions in the case. (*Id*. ¶ 26.) Plaintiff further alleges that
22 Defendant County has a "policy, custom, or practice of routinely sending ex-parte communications
23 to Family Court containing false representations and containing requests for custody orders, in lieu
24 of filing a juvenile dependency petition or presenting a warrant affidavit." (*Id*. ¶ 27.)

25    Plaintiff asserts a claim for "warrantless seizure" under Section 1983 for violation of her
26 "right to familial association guaranteed under . . . the First, Fourth, and Fourteenth Amendments"
27 to the U.S. Constitution as a result of the defendant unnamed HHSA employees' "sending a written
28 ex parte communication to the family court containing false and fabricated evidence in connection

3

with a request for custody and visitation orders, or conspir[ing] with others to commit the same." (Compl. ¶¶ 31, 34.)  She also brings a Section 1983 claim against Defendant County for *Monell* liability, asserting that Defendant established or followed "policies, procedures, customs, and/or practices" of "separating children from their parents without first obtaining a protective custody warrant in the absence of exigent circumstances;" "sending ex parte written communications to family courts, containing requests for custody or visitation orders, that do not meet the requirements for a warrant affidavit;" and "presenting false and fabricated evidence to the family court, in connection with a pending custody dispute, through ex parte written communications." (Compl. ¶ 44.) Plaintiff further alleges that the County acted with "deliberate indifference in implementing a policy of inadequate training and/or supervision, and/or by failing to train and/or supervise its officers, agents, employees and state actors, in providing the constitutional protections guaranteed to individuals, including those under the Fourth and Fourteenth Amendments, when performing actions related to the investigation of child abuse." (*Id.*) She seeks general and special damages, punitive damages, and injunctive relief.[1]  (*Id.* at p. 12.)

For the reasons discussed below, Plaintiff has not stated any cognizable claims, but may be able to amend to correct the deficiencies in her pleading. Thus, the Court provides the pleading and legal standards for the claims on which Plaintiff is attempting to proceed and leave to file a first amended complaint.

### D. Pleading Requirements

#### 1. Federal Rule of Civil Procedure 8(a)

Under Federal Rule of Civil Procedure 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In determining whether a complaint states a claim on which relief may be granted, allegations of material fact are

---

[1] Plaintiff also requests attorney's fees.  Pro se litigants are not entitled to an award of attorney's fees under 42 U.S.C. § 1988.  *See Gonzales v. Kangas*, 814 F.2d 1411, 1412 (9th Cir. 1987).

taken as true and construed in the light most favorable to the plaintiff. *See Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989). Since Plaintiff is appearing *pro se*, the Court must construe the allegations of [her] complaint liberally and must afford Plaintiff the benefit of any doubt. *See Karim–Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988). However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations." *Neitzke v. Williams*, 490 U.S. 319, 330 n.9 (1989). "[A] liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled." *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting *Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982)).

Further, "a plaintiff's obligation to provide the 'grounds' of [her] 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . . Factual allegations must be enough to raise a right to relief above the speculative level." *See Twombly*, 550 U.S. at 555 (internal citations omitted); *see also Iqbal*, 556 U.S. at 678 (To avoid dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.") (internal citations omitted).

### 2. Section 1983

Section 1983 provides a cause of action for the violation of Plaintiff's constitutional or other federal rights by persons acting under color of state law. *Nurre v. Whitehead*, 580 F.3d 1087, 1092 (9th Cir 2009); *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). "Section 1983 is not itself a source of substantive rights but merely provides a method for vindicating federal rights elsewhere conferred." *Crowley v. Nevada ex rel. Nevada Sec'y of State*, 678 F.3d 730, 734 (9th Cir. 2012) (citing *Graham v. Connor*, 490 U.S. 386, 393–94 (1989)) (internal quotation marks omitted). It states in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction

thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. To state a claim under Section 1983, a plaintiff must allege facts from which it may be inferred (1) she was deprived of a federal right, and (2) a person or entity who committed the alleged violation acted under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Williams v. Gorton*, 529 F.2d 668, 670 (9th Cir. 1976). A plaintiff must show a causal connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. *See Rizzo v. Goode*, 423 U.S. 362, 373–75 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978) (citation omitted).

## II.  DISCUSSION

### A.  First Cause of Action: "Warrantless Seizure"

Plaintiff asserts the first cause of action against "Tulare Health & Human Services Agency ('HHSA')." (Compl. p. 6.) It does not appear, however, that HHSA is a named defendant in this case.[2] (*See id*. ¶ 3.) Nor could HHSA, as a municipal department of the County, be a proper defendant in this Section 1983 action. *See Vance v. County of Santa Clara*, 928 F. Supp. 993, 996 (N.D.Cal.1996) (holding that the term "persons" for Section 1983 purposes does not encompass municipal departments).

Assuming Plaintiff is instead seeking to assert this claim against the two unknown HHSA employees, she asserts a violation of her right to familial association as "guaranteed under . . . the First, Fourth, and Fourteenth Amendment." (Compl. ¶ 31.) The Supreme Court has recognized that the Fourteenth Amendment's Due Process Clause protects the liberty interest "of parents in the care, custody, and control of their children." *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *see also Santosky v. Kramer*, 455 U.S. 745, 753 (1982) (discussing "the fundamental liberty interest of

---

[2] This lack of clarity is compounded by the inclusion of track changes throughout the complaint. (*See* Compl. pp. 2–6.)

natural parents in the care, custody, and management of their child"). The right of familial association is also protected by the First Amendment.³ *Lee v. City of Los Angeles*, 250 F.3d 668, 685 (9th Cir. 2001).

"While a constitutional liberty interest in the maintenance of the familial relationship exists, this right is not absolute. The interest of the parents must be balanced against the interests of the state and, when conflicting, against the interests of the children." *Woodrum v. Woodward Cty., Okl.*, 866 F.2d 1121, 1125 (9th Cir. 1989). The right to familial association has both a substantive and a procedural component. *Keates v. Koile*, 883 F.3d 1228, 1236 (9th Cir. 2018). While the right is a fundamental liberty interest, officials may interfere with the right if they "provide the parents with fundamentally fair procedures[.]" *Keates*, 883 F.3d at 1236 (internal citations omitted). On the other hand, "official conduct that 'shocks the conscience' in depriving parents of [a relationship with their children]" is cognizable as a violation of substantive due process. *Capp v. County of San Diego*, 940 F.3d 1046, 1060 (9th Cir. 2019) (quoting *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010)).

Here, the factual predicate(s) for Plaintiff's Section 1983 familial association claim is unclear. For example, Plaintiff captions the claim "warrantless seizure," but there are no factual allegations that any defendant "seized" Y.L. from Plaintiff's custody. Instead, Plaintiff pleads that the family court awarded custody of Y.L. to Mr. Ennslin, apparently in the context of a custody dispute. (*See* Compl. ¶ 25.) Even if there were such factual allegations, Plaintiff could not state a claim for a violation of the Fourth Amendment, as such claim is properly asserted by the *child* who was seized. *See Wallis v. Spencer*, 202 F.3d 1126, 1137 n.8 (9th Cir.2000) (a claim by parents regarding the unconstitutional removal of children is properly assessed under the First and Fourteenth Amendment standard for interference with the right to family association, while a claim by the child who was seized is assessed under the Fourth Amendment.).

In addition to alleging that HHSA employees sent a written ex parte communication containing false and fabricated evidence to the family court, Plaintiff pleads facts relating to the

---

³ First Amendment rights to familial association are "measured by the same standard as Fourteenth Amendment rights to familial association." *See Kaur v. City of Lodi*, 263 F. Supp. 3d 947, 973 (E.D. Cal. 2017).

alleged denial of an interpreter at meetings with HHSA representatives in 2014, 2015, 2017, and 2018. It is not clear whether Plaintiff is intending to base her Section 1983 familial association due process claim on these allegations, and, if so, against which defendant she brings such claim. To the extent Plaintiff intends to proceed with a claim based on the alleged denial of an interpreter, she must take care to ensure that such claim is not barred by the two-year statute of limitations that applies in Section 1983 cases.[4] *See Ambrose v. Coffey*, 696 F. Supp. 2d 1119, 1131 (E.D. Cal. 2010) ("[I]n California, the statute of limitations for Section 1983 claims is two years.").

### B. *Rooker–Feldman* Doctrine

Plaintiff's Section 1983 familial association claim may implicate the *Rooker–Feldman* doctrine and this Court's subject matter jurisdiction. Under the *Rooker–Feldman* doctrine, "a party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States District Court based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Johnson v. DeGrandy*, 512 U.S. 997, 1005–06 (1994) (citing *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983), and *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923)). Review of state court decisions may only be conducted in the United States Supreme Court. *Feldman*, 460 U.S. at 476 & 486; *Rooker*, 263 U.S. at 416; see also 28 U.S.C. § 1257. The *Rooker–Feldman* jurisdictional bar applies even if the complaint raises federal constitutional issues. Feldman, 460 U.S. at 486. More specifically, the bar applies if the challenge to the state court decision is brought as a Section 1983 civil rights action. *See Branson v. Nott*, 62 F.3d 287, 291 (9th Cir. 1995).

"[A] federal district court dealing with a suit that is, in part, a forbidden de facto appeal from a judicial decision of a state court must refuse to hear the forbidden appeal. As part of that refusal, it must also refuse to decide any issue raised in the suit that is 'inextricably intertwined' with an issue resolved by the state court in its judicial decision." *Doe v. Mann*, 415 F.3d 1038, 1043 (9th Cir. 2005) (quoting *Noel v. Hall*, 415 F.3d 1145, 1158 (9th Cir. 2003)). The *Rooker–Feldman*

---

[4] Plaintiff also refers in her complaint to the unnamed defendant HHSA employees having "conspired" with others to violate her constitutional rights. (*See, e.g.*, Compl. ¶ 34.) To the extent Plaintiff intends to assert a claim for conspiracy under Section 1983, she must "allege [some] facts to support the existence of a conspiracy among the defendants." *Buckey v. Cty. of Los Angeles*, 968 F.2d 791, 794 (9th Cir. 1992). Conclusory allegations regarding the existence of a conspiracy, without more, do not suffice.

doctrine applies not only to final state court orders and judgments, but to interlocutory orders and non-final judgments issued by a state court as well. *Doe & Assoc. Law Offices v. Napolitano*, 252 F.3d 1026, 1030 (9th Cir. 2001).

Notwithstanding the foregoing, "for *Rooker–Feldman* to apply, a plaintiff must seek not only to set aside a state court judgment; he or she must also allege a legal error by the state court as the basis for that relief." *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1140 (9th Cir. 2004). "If, on the other hand, a federal plaintiff asserts as a legal wrong an allegedly illegal act or omission by an adverse party, *Rooker–Feldman* does not bar jurisdiction." *Noel*, 341 F.3d at 1164. "A plaintiff alleging extrinsic fraud on a state court is not alleging a legal error by the state court; rather, he or she is alleging a wrongful act by the adverse party." *Kougasian*, 359 F.3d at 1140–41. "Extrinsic fraud is 'conduct which prevents a party from presenting [her] claim in court.'" *Ragan v. Cty. of Humboldt Dept. of Health & Human Servs.*, Case No. 16-cv-05580-RS, 2017 WL 878083, at *4 (N.D. Cal. Mar. 6, 2017) (quoting *Wood v. McEwen*, 644 F.2d 797, 801 (9th Cir. 1981) ).

Here, Plaintiff's complaint does not contain enough information for the Court to make a conclusive determination of whether *Rooker–Feldman* bars jurisdiction over her Section 1983 familial association claim. For example, while she is not explicitly seeking relief from the family court's custody orders, Plaintiff does seek unspecified injunctive relief (*see* Compl. p. 12) that could be construed as directed to those orders. *See Bianchi v. Rylaarsdam*, 334 F.3d 895, 900 (9th Cir. 2003) (whether the federal plaintiff's claims are independent from the state court decision is determined by looking to the relief the plaintiff seeks.).

In addition, the nature of Plaintiff's allegations may necessarily implicate review of the family court's custody order. *See, e.g., Tali v. Liao,* 18-cv-00330-LHK, 2018 WL 5816171, at *3–4 (N.D. Cal. Nov. 5, 2018) (Plaintiff alleged that the defendants "conspired and lied to illegally remove [his] child from his care and sought "general and punitive damages, as well as injunctive relief"; the court dismissed with prejudice because the plaintiff's "allegations of Defendants' purported misconduct are inexorably intertwined with the state court custody decision [ ] [such that] 'adjudication of the federal claims would undercut the state ruling.'"); *Ismail v. Cty. of Orange*, No. SACV 10-00901 VBF (AJW), 2012 WL 1642210, at *13 (C.D. Cal. Mar. 21, 2012) ("The *Rooker–*

*Feldman* doctrine bars plaintiff's claims that [the county social worker] presented malicious, false, fabricated, inaccurate, or biased recommendations, reports, or testimony to the juvenile court because those claims are inextricably intertwined with the orders of the juvenile court and the court of appeal regarding A.I.'s status as a dependent of the court, his placement after removal from plaintiff's home, plaintiff's visitation, reunification services, plaintiff's parental rights, and other matters adjudicated in the dependency case."). *See also id.* at *14 ("In attacking the credibility and sufficiency of the recommendations, reports, and evidence [the county social worker] presented to the state court, plaintiff's complaint constitutes a de facto appeal of the state court's orders and judgments in the dependency case. Plaintiff cannot obtain review of, or relief from, those orders in this court.") (collecting cases). *But see Alcala v. Murphy*, No. 2:19-cv-00969-KJM-CKD (PS), 2019 WL 5288325, at *1 (E.D. Cal. Oct. 18, 2019) ("Plaintiffs can state section 1983 claims against state officers, such as social workers involved in family-court proceedings, which do not directly attack the state court judgment.") (citing *Hardwick v. Cty. of Orange*, 844 F.3d 1112, 1116 (9th Cir. 2017) (allowing a section 1983 action to proceed against social workers for allegedly providing perjured testimony in a dependency proceeding that resulted in a mother losing custody)); *Thornton v. Cty. of Los Angeles*, No. CV 16-08482 TJH (AGRx), 2017 WL 11504794, at *2 (C.D. Cal. June 27, 2017) ("Thornton is not barred, however, from bringing civil rights claims alleging illegal acts and omissions by a social worker during state dependency proceedings."); *Lahey v. Contra Costa Cty. Dep't of Children & Family Servs.*, No. C01-1075 MJJ, 2004 WL 2055716, at *9 (N.D. Cal. Sept. 2, 2004) ("In this case, Plaintiffs . . . attempt to demonstrate a series of legal wrongs perpetrated by Defendants that led to several unfavorable custody decisions, but Plaintiffs do not seek in this suit to overturn the custody arrangements . . . . Even though a favorable decision in federal court would undermine the credibility of the state court decision, the *Rooker–Feldman* doctrine, as recently explained by the Ninth Circuit in *Noel*, does not bar jurisdiction in this case."). It is also unclear whether Plaintiff had an opportunity to challenge the HHSA-submitted report at the September 6, 2018, hearing before the family court.[5] *See, e.g., Benavidez v. Cty. of San Diego*, No. 3:18-cv-0558-

---

[5] To the extent that Plaintiff did challenge the report before the family court, the doctrine of issue preclusion may be implicated instead of *Rooker-Feldman*. *See Tye v. Cty. of Orange*, Case No. 8:18-cv-00544-RGK-KES, 2020 WL 2372994, at *9 (C.D. Cal. Jan. 14, 2020).

CAB-(AGS), 2019 WL 581647, at *5 n.4 (S.D. Cal. Feb. 12, 2019).

### C. Second Cause of Action: "*Monell* Related Claims"

In *Monell v. Dep't of Social Servs.,* 436 U.S. 658 (1978), the Supreme Court held that, because there is no respondeat superior liability under Section 1983, "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell*, 436 U.S. at 690–94. To establish liability under *Monell*, a plaintiff must satisfy four conditions: "(1) that he [or she] possessed a constitutional right of which he was deprived; (2) that the [local governmental entity] had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) that the policy is the moving force behind the constitutional violation." *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992) (citation and internal quotation marks omitted). A government entity may be held liable for "constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Monell*, 436 U.S. at 690–91.

"The custom or policy must be a deliberate choice to follow a course of action . . . made from various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Castro v. Cty. of Los Angeles,* 833 F.3d 1060, 1075 (9th Cir. 2016) (en banc) (internal citations and quotation marks omitted). It must be so "persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Put another way, the practice must have been going on for a sufficient amount of time, "frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F. 3d 911, 918 (9th Cir. 1996). By itself, "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell* . . . ." *City of Oklahoma City v. Turtle*, 471 U.S. 808, 823–24 (1985). Additionally, to establish that a county is responsible, "a plaintiff must show that the 'policy or custom' led to the plaintiff's injury." *Castro*, 833 F.3d at 1073.

The Supreme Court has also held that a municipality may be liable if, with respect to a claim

11

based on improper training of employees, the "failure to train amounts to deliberate indifference to the rights of persons with whom the [employees] come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). "[T]he failure to provide proper training may fairly be said to represent a policy for which the [municipal entity] is responsible, and for which the [municipal entity] may be held liable if it actually causes injury." *Id.* at 390. Finally, there must be a direct causal link between a failure to properly train and the alleged constitutional deprivation. *Id.* at 385.

Here, Plaintiff fails to provide sufficient allegations to state *Monell* claims against the County. For example, she alleges that the County is liable for violating her Fourteenth Amendment rights because it "act[ed] with deliberate indifference in implementing a policy of inadequate training and/or supervision, and/or by failing to train and/or supervise its officers, agents, employees and state actors, in providing the constitutional protections guaranteed to individuals, including those under the Fourth and Fourteenth Amendments, when performing actions related to the investigation of child abuse." (Compl. ¶ 44.) Contrary to these conclusory allegations, however, the alleged "false and fabricated evidence" contained in a single report submitted by HHSA employees to the family court do not raise a reasonable inference that the County was deliberately indifferent to such transgression or the need to adequately train its employees to avoid it.

Plaintiff's allegations that the County is liable under Section 1983 due to its "policy, custom, or practice of presenting false and fabricated evidence to the family court, in connection with a pending custody dispute, through ex parte written communications" (Compl. ¶ 44) is similarly conclusory. She fails to plead any facts demonstrating the existence of any such policy or widespread practice, and instead appears to base the claim on the one alleged incident that happened to her. In addition, it is not clear that allegations regarding the County's "policy, custom, or practice of separating children from their parents without first obtaining a protective custody warrant in the absence of exigent circumstances" bears any relationship to the underlying constitutional deprivation claimed in the case, because, as indicated above, there are no facts pleaded showing that any defendant "separated" Y.L. from her parents and took her into "protective custody." *See Castro*, 833 F.3d at 1075 ("The 'first inquiry in any case alleging municipal liability under § 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged

constitutional deprivation.'") (quoting *City of Canton*, 489 U.S. at 385.).

### III. CONCLUSION AND ORDER

As noted above, the Court will provide Plaintiff with an opportunity to amend her claims and cure, to the extent possible, the identified deficiencies. *Lopez*, 203 F.3d at 1130. Plaintiff may not change the nature of this suit by adding new, unrelated claims in her amended complaint. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

Plaintiff's amended complaint should be brief, Fed. R. Civ. P. 8(a), but it must state what the named defendant did that led to the deprivation of her constitutional rights, *Iqbal*, 556 U.S. at 678–79. It should also establish this Court's subject matter jurisdiction over her claims. Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555 (citations omitted); however, Plaintiff need not give any legal arguments or cite to any cases in her complaint.[6] Finally, Plaintiff is advised that an amended complaint supersedes the original complaint. *Lacey v. Maricopa Cty.*, 693 F.3d 896, 927 (9th Cir. 2012) (en banc). Therefore, Plaintiff's amended complaint must be "complete in itself without reference to the prior or superseded pleading," Rule 220, Local Rules of the United States District Court, Eastern District of California, and be free of track changes.

Based on the foregoing, it is HEREBY ORDERED that:

1. Plaintiff is granted leave to file a first amended complaint; and
2. Within twenty-one (21) days from the date of service of this order, Plaintiff must file a first amended complaint curing the deficiencies identified by the Court in this order, or a notice of voluntary dismissal.

**If Plaintiff fails to file an amended complaint in compliance with this order, the undersigned will recommend to the assigned district judge that this action be dismissed for failure to state a claim and to obey a court order.**

IT IS SO ORDERED.

---

[6] The amended complaint should not include, for example, any argument or case authority directed to whether the constitutional rights at issue are "clearly established." (*See, e.g.,* Compl ¶¶ 31, 33.)

13

Dated: **August 14, 2020**                         /s/ *Sheila K. Oberto*
                                                UNITED STATES MAGISTRATE JUDGE