# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHONG SOOK LIM,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>CHILD PROTECTIVE SERVICES OF TULARE COUNTY; LYDIA SUAREZ; JENNIFER MENNE; and MELANIE HUERTA,<br><br>　　　　　　Defendants. | CASE NO. 1:20-cv-01049-NONE-SKO<br><br>**FINDINGS AND RECOMMENDATIONS THAT THE ACTION PROCEED AGAINST DEFENDANTS JENNIFER MENNE AND MELANIE HUERTA ON PLAINTIFF'S FIRST CAUSE OF ACTION AND PLAINTIFF'S SECOND CAUSE OF ACTION AND DEFENDANTS CHILD PROTECTIVE SERVICES OF TULARE COUNTY AND LYDIA SUAREZ BE DISMISSED**<br><br>(Doc. 7)<br><br>**OBJECTIONS DUE: 21 DAYS** |

## I.　　BACKGROUND

On July 30, 2020, Plaintiff Chong Sook Lim, proceeding pro se, filed a civil rights action pursuant to 42 U.S.C. § 1983 ("Section 1983") against the County of Tulare (the "County") and two unknown "officer[s], agent[s], and/or employee[s]" of the County. (Doc. 1.) Plaintiff also filed an application to proceed *in forma pauperis*, which was granted on July 31, 2020. (Docs. 2 & 3.)

On August 17, 2020, Plaintiff's complaint was screened in accordance with 28 U.S.C. § 1915(e)(2). (*See* Doc. 4.) In a fourteen-page order, the undersigned found that Plaintiff did not adequately plead facts to state a claim under Section 1983 against any defendant and that her complaint implicated the *Rooker–Feldman* bar to jurisdiction. (*See* Doc. 4 at 6–13.) Plaintiff was

also advised that, as a pro se litigant, she is not entitled to attorney's fees. (*See id*. at 4 n.1.) Plaintiff was provided with the applicable legal standards so that she could determine if she would like to pursue her case, and she was granted twenty-one (21) days leave to file an amended complaint curing the pleading deficiencies identified in the order. (*Id*. at 13.) Plaintiff was advised that any amended complaint should not include any argument or case authority and be free of tracked changes, which had been included in her original complaint. (*Id*.)

Plaintiff filed a first amended complaint on September 4, 2020. (Doc. 5.) The undersigned reviewed the amended complaint and issued a second screening order. (Doc. 6.) The second screening order stated that, other than the removal of track changes and minor rewording of headings, the allegations, claims, and prayer for relief were copied verbatim from the initial complaint. (Doc. 6.) The undersigned concluded that Plaintiff's first amended complaint did not address, much less cure, any of the substantive pleading deficiencies identified in the Court's first screening order. (*See id*.) Plaintiff was served another copy of the first screening order and granted one final opportunity to amend her allegations. (*See id*.) She was also cautioned that the failure to file a second amended complaint in compliance with the Court's screening orders would result in a recommendation that this case be dismissed. (*See id*.)

On October 19, 2020, Plaintiff filed her second amended complaint against Defendant "Child Protective Services of Tulare County" ("Tulare County CPS"), Lydia Suarez, Jennifer Menne, and Melanie Huerta. (Doc. 7.) After screening Plaintiff's second amended complaint, the Court recommends that this action proceed against Defendants Menne and Huerta, and that Plaintiff's claims against Defendants Tulare County CPS and Suarez be dismissed without leave to amend.

## II.   LEGAL STANDARDS

**A.   Screening Requirement**

In cases where the plaintiff is proceeding *in forma pauperis*, the Court is required to screen each case, and shall dismiss the case at any time if the Court determines that the allegation of poverty is untrue, or the action or appeal is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from

such relief. 28 U.S.C. § 1915(e)(2). If the Court determines that a complaint fails to state a claim, leave to amend may be granted to the extent that the deficiencies of the complaint can be cured by amendment. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc).

The Court's screening of a complaint under 28 U.S.C. § 1915(e)(2) is governed by the following standards. A complaint may be dismissed as a matter of law for failure to state a claim for two reasons: (1) lack of a cognizable legal theory; or (2) insufficient facts under a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). Plaintiff must allege a minimum factual and legal basis for each claim that is sufficient to give each defendant fair notice of what plaintiff's claims are and the grounds upon which they rest. *See, e.g., Brazil v. U.S. Dep't of the Navy*, 66 F.3d 193, 199 (9th Cir. 1995); *McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991)

A lack of subject matter jurisdiction may support finding that a complaint is frivolous. *See Pratt v. Sumner*, 807 F.2d 817, 819 (9th Cir. 1987). The Court similarly has a continuing duty to determine whether it has subject matter jurisdiction. Fed. R. Civ. Proc. 12(h)(3). Federal question jurisdiction exists over actions "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The well-pleaded complaint rule governs whether a complaint establishes federal question jurisdiction and "provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) (citation omitted).

**A.     Pleading Requirements**

**1.     Federal Rule of Civil Procedure 8(a)**

Under Federal Rule of Civil Procedure 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In determining whether a complaint states a claim on which relief may be granted, allegations of material fact are taken as true and construed in the light most favorable to the plaintiff. *See Love*

*v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989). Since Plaintiff is appearing *pro se*, the Court must construe the allegations of [her] complaint liberally and must afford Plaintiff the benefit of any doubt. *See Karim–Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988). However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations." *Neitzke v. Williams*, 490 U.S. 319, 330 n.9 (1989). "[A] liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled." *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting *Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982)).

Further, "a plaintiff's obligation to provide the 'grounds' of [her] 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . . Factual allegations must be enough to raise a right to relief above the speculative level." *See Twombly*, 550 U.S. at 555 (internal citations omitted); *see also Iqbal*, 556 U.S. at 678 (To avoid dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.") (internal citations omitted).

**2.     Section 1983**

Section 1983 provides a cause of action for the violation of Plaintiff's constitutional or other federal rights by persons acting under color of state law. *Nurre v. Whitehead*, 580 F.3d 1087, 1092 (9th Cir 2009); *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). "Section 1983 is not itself a source of substantive rights but merely provides a method for vindicating federal rights elsewhere conferred." *Crowley v. Nevada ex rel. Nevada Sec'y of State*, 678 F.3d 730, 734 (9th Cir. 2012) (citing *Graham v. Connor*, 490 U.S. 386, 393–94 (1989)) (internal quotation marks omitted). It states in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the

>jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  To state a claim under Section 1983, a plaintiff must allege facts from which it may be inferred (1) she was deprived of a federal right, and (2) a person or entity who committed the alleged violation acted under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Williams v. Gorton*, 529 F.2d 668, 670 (9th Cir. 1976).  A plaintiff must show a causal connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff.  *See Rizzo v. Goode*, 423 U.S. 362, 373–75 (1976).  The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made."  *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978) (citation omitted).

### III. DISCUSSION

**A.  Plaintiff's Allegations**

Plaintiff, who is of Korean descent and has limited ability to communicate in English, met Dennis Ennslin through an online dating site for Mormons.  (Doc. 7 ("SAC") ¶ 13.)  Plaintiff and Mr. Ennslin were married and lived together for five months prior to separating.  (*Id*.)  Their brief marriage yielded a child, Y.L., and the couple divorced in 2014.  (*Id*.)  Plaintiff alleges that in 2014, Mr. Ennslin placed false report to Tulare County CPS that Plaintiff was physically abusing her 14-year-old daughter.  (SAC ¶ 14.)  This, according to Plaintiff, "set off a chain of Tulare County CPS encounters" in 2014, 2015, 2017, and 2018, none of which resulted in the initiation of a juvenile dependency hearing.  (*Id*. ¶ 15.)

Plaintiff alleges that from 2014 through 2018, she was interviewed by Tulare County CPS as part of an investigation of child abuse and requested a Korean interpreter be present.  (*Id*. ¶ 16.)  According to Plaintiff, Defendants Jennifer Menne and Melanie Huerta, social worker employees of the County of Tulare, "stated that they would conduct the investigation interviews in English and provide a Korean interpreter later, if necessary."  (*Id*.)  Plaintiff states that each interview with Tulare County CPS was conducted without a Korean interpreter and that after the interview she

was asked to "sign a document confirming the interview was conducted in English, and explaining that investigators could no longer be asked to provide interpretation services." (*Id*. ¶ 17.) She alleges that Defendants "denied her the services of an interpreter and failed to make reasonable efforts to ascertain whether [she] needed the services of an interpreter," and that Tulare County CPS social workers "filed a report stating that they understood all of [] Plaintiff's English," which they "wrongfully claimed 'is excellent.'" (*Id*. ¶¶ 18, 21.) On July 12, 2018, after having "brought two people from other community agencies" to "support Plaintiff's need to be provided interpretation services in Korean," Tulare County CPS provided a Korean language interpreter via telephone. (*Id*. ¶ 23.) According to Plaintiff, because she had been denied her right to an interpreter, "inaccurate reports filed by [Tulare County] CPS contributed to Plaintiff's ultimate loss of full custody of the child, Y.L." (*Id*. ¶ 24.)

Plaintiff further alleges that in 2017 she took Y.L. to a hospital, having noticed while bathing the child that her vagina was swollen. (SAC ¶ 25.) According to Plaintiff, the hospital doctor contacted the police and a report was made to Tulare County CPS. (*Id*.) Plaintiff alleges on July 15, 2018, she took Y.L. to be examined for another vaginal irritation. (*Id*. ¶ 28.) As a result of the examination, the physician assistant contacted Tulare County CPS and made a report of suspected child abuse. (*Id*.)

Plaintiff alleges on July 30, 2018, Plaintiff and Mr. Ennslin appeared at a family court hearing, at which Plaintiff was shown "a report sent to the family court judge by [Tulare County] CPS," which is alleged to be "part of the 'confidential' portion of the family court case file." (SAC ¶ 29.) According to Plaintiff, the report "contained a [sic] chock full of lies and omissions of known exculpatory facts," including that Y.L. was "coached" to make "statements indicating she was suffering from child abuse" and that Plaintiff tried to kill Mr. Ennslin, and the report "contained a request for custody orders." (*Id*. ¶ 30.) Plaintiff alleges that Defendants Menne and Huerta signed the report and sent the report to the family court knowing that the report "would be presented as evidence and relied upon" by the court. (*Id*. ¶ 30–31.)

According to Plaintiff, on September 6, 2018, the family court held a hearing, at which the court awarded "full legal and full physical custody" of Y.L. to Mr. Ennslin, and permitted Plaintiff

to have once-a-week two hour supervised visits with Y.L. for two hours.  (SAC ¶ 32.)  Plaintiff alleges that she has not seen Y.L. since March 6, 2020, because the "supervised visitation provider closed down" and she is now "limited to virtual visits." (*Id*.)   Plaintiff alleges that the family court "reviewed and relied on the misrepresentations and requested custody orders" contained in the report provided by Tulare County CPS in making its decisions in the case. (*Id*. ¶ 33.)  Plaintiff further alleges that Defendant Tulare County CPS has a "policy, custom, or practice of routinely sending ex-parte communications to Family Court containing false representations and containing requests for custody orders, in lieu of filing a juvenile dependency petition or presenting a warrant affidavit." (*Id*. ¶ 34.)

Plaintiff asserts a claim for "use of false and fabricated evidence" under Section 1983 against all defendants for violation of her "right to familial association guaranteed under . . . the First and Fourteenth Amendments" to the U.S. Constitution as a result of Defendants Menne and Huerta "sending a written *ex parte* communication to the family court misrepresenting Plaintiff's conduct and integrity in connection with a request for custody or visitation orders, or conspir[ing] with others to commit the same." (SAC ¶¶ 40, 43.)  She also brings a Section 1983 claim against all defendants for *Monell* liability, asserting that "Defendants, thought its entity [Tulare County] CPS," established or followed "policies, procedures, customs, and/or practices" of "separating children from their parents without first obtaining a protective custody warrant in the absence of exigent circumstances;" "sending ex parte written communications to family courts, containing requests for custody or visitation orders, that do not meet the requirements for a warrant affidavit;" and "presenting false and fabricated evidence to the family court, in connection with a pending custody dispute, through ex parte written communications." (SAC ¶ 50.)  Plaintiff further alleges that Defendants acted with "deliberate indifference in implementing a policy of inadequate training and/or supervision, and/or by failing to train and/or supervise its officers, agents, employees and state actors, in providing the constitutional protections guaranteed to individuals, including those under Fourteenth Amendment, when performing actions related to the investigation of child abuse." (*Id*.)  She seeks general and special damages, punitive damages, and injunctive relief. (*Id*. at p. 12.)

**A.    First Cause of Action: "Use of False and Fabricated Evidence"**

      **1.    Defendants Tulare County CPS and Lydia Suarez**

Plaintiff asserts the first cause of action against Defendant Tulare County CPS and Defendants "Lydia Huerta," Jennifer Menne, and Melanie Huerta, in their individual capacities, under Section 1983 for violation of her right to familial association as "guaranteed under . . . the First and Fourteenth Amendment." (SAC ¶¶ 3–5, 37.)  As previously advised, a municipal department of the County of Tulare such as CPS cannot be be a proper defendant in this Section 1983 action. *See Vance v. County of Santa Clara*, 928 F. Supp. 993, 996 (N.D. Cal. 1996) (holding that the term "persons" for Section 1983 purposes does not encompass municipal departments); *see also Devine v. Fresno Cty. CPS*, No. F-05-1408 REC LJO, 2006 WL 278590, at *2 (E.D. Cal. Feb. 2, 2006) (finding Section 1983 claims Fresno County CPS are not cognizable and dismissing them with prejudice).  Thus, this claim against Defendant Tulare County CPS is not cognizable.

Plaintiff's claim against Defendant "Lydia Huerta," which the Court construes as a claim intended to be asserted against named Defendant Lydia *Suarez*, also fails because Plaintiff does not allege any facts that Defendant Suarez personally participated in the deprivation of Plaintiff's constitutional rights.  An individual cannot be held liable on a civil rights claim unless the facts establish the defendant's personal involvement in the constitutional deprivation or a causal connection between the defendant's wrongful conduct and the alleged constitutional deprivation.  *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989); *Johnson*, 588 F.2d at 743–44.  Because respondeat superior liability is inapplicable to Section 1983 suits, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.*  Plaintiff may not hold Defendant Suarez liable for the alleged violation of her right to familial association, as there are no allegations that she personally participated in that violation—indeed there are no factual allegations made against Defendant Suarez at all.  Thus, under the *Twombly* standard, Plaintiff's conclusory allegation that Defendant Suarez deprived Plaintiff of her constitutional rights fails to state a claim upon which relief may be granted.

///

### 2. Defendants Menne and Huerta

The Supreme Court has recognized that the Fourteenth Amendment's Due Process Clause protects the liberty interest "of parents in the care, custody, and control of their children." *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *see also Santosky v. Kramer*, 455 U.S. 745, 753 (1982) (discussing "the fundamental liberty interest of natural parents in the care, custody, and management of their child"). The right of familial association is also protected by the First Amendment. *Lee v. City of Los Angeles*, 250 F.3d 668, 685 (9th Cir. 2001).

"While a constitutional liberty interest in the maintenance of the familial relationship exists, this right is not absolute. The interest of the parents must be balanced against the interests of the state and, when conflicting, against the interests of the children." *Woodrum v. Woodward Cty., Okl.*, 866 F.2d 1121, 1125 (9th Cir. 1989). The right to familial association has both a substantive and a procedural component. *Keates v. Koile*, 883 F.3d 1228, 1236 (9th Cir. 2018). While the right is a fundamental liberty interest, officials may interfere with the right if they "provide the parents with fundamentally fair procedures[.]" *Keates*, 883 F.3d at 1236 (internal citations omitted). On the other hand, "official conduct that 'shocks the conscience' in depriving parents of [a relationship with their children]" is cognizable as a violation of substantive due process. *Capp v. County of San Diego*, 940 F.3d 1046, 1060 (9th Cir. 2019) (quoting *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010)).

Here, Plaintiff pleads that Defendants Jennifer Menne and Melanie Huerta, Tulare County CPS employees, deprived her of a Korean interpreter at their interviews, which resulted in the filing of "inaccurate reports" that "contributed" to the loss of full custody of her child Y.L. (SAC ¶ 24.) Plaintiff alleges that one "ex parte report," signed by Defendants Menne and Huerta, contained false statements and omitted "known exculpatory facts" that were relied on by the family court in deciding to award of full legal and physical custody of Plaintiff's child to her father Mr. Ennslin. (SAC ¶¶ 30–32.) The undersigned finds that, liberally construed, these allegations are sufficient to state a cognizable Section 1983 familial association claim against Defendants Menne and Huerta. *See Hardwick v. Cty. of Orange*, 844 F.3d 1112, 1116 (9th Cir. 2017); *Thornton v. Cty. of Los Angeles*, No. CV 16-08482 TJH (AGRx), 2017 WL 11504794, at

*2 (C.D. Cal. June 27, 2017) ("Thornton is not barred, however, from bringing civil rights claims alleging illegal acts and omissions by a social worker during state dependency proceedings."); *Lahey v. Contra Costa Cty. Dep't of Children & Family Servs*., No. C01-1075 MJJ, 2004 WL 2055716, at *9 (N.D. Cal. Sept. 2, 2004) ("In this case, Plaintiffs . . . attempt to demonstrate a series of legal wrongs perpetrated by Defendants that led to several unfavorable custody decisions, but Plaintiffs do not seek in this suit to overturn the custody arrangements . . . . Even though a favorable decision in federal court would undermine the credibility of the state court decision, the *Rooker–Feldman* doctrine, as recently explained by the Ninth Circuit in *Noel*, does not bar jurisdiction in this case.").

### B.     Second Cause of Action: "*Monell* Related Claims"

Plaintiff alleges a Section 1983 claim pursuant to *Monell v. Dep't of Social Servs.,* 436 U.S. 658 (1978), against Defendants Tulare County CPS, "Lydia Huerta," Jennifer Menne, and Melanie Huerta.  In *Monell*, the Supreme Court held that, because there is no respondeat superior liability under Section 1983, "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents.  Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."  436 U.S. at 690–94.  To establish liability under *Monell*, a plaintiff must satisfy four conditions: "(1) that he [or she] possessed a constitutional right of which he was deprived; (2) that the [local governmental entity] had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) that the policy is the moving force behind the constitutional violation."  *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992) (citation and internal quotation marks omitted).  A government entity may be held liable for "constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels."  *Monell*, 436 U.S. at 690–91.

"The custom or policy must be a deliberate choice to follow a course of action . . . made from various alternatives by the official or officials responsible for establishing final policy with

respect to the subject matter in question." *Castro v. Cty. of Los Angeles,* 833 F.3d 1060, 1075 (9th Cir. 2016) (en banc) (internal citations and quotation marks omitted). It must be so "persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Put another way, the practice must have been going on for a sufficient amount of time, "frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino* v. Gates, 99 F. 3d 911, 918 (9th Cir. 1996). By itself, "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell* . . . ." *City of Oklahoma City v. Turtle*, 471 U.S. 808, 823–24 (1985). Additionally, to establish that a county is responsible, "a plaintiff must show that the 'policy or custom' led to the plaintiff's injury." *Castro*, 833 F.3d at 1073.

The Supreme Court has also held that a municipality may be liable if, with respect to a claim based on improper training of employees, the "failure to train amounts to deliberate indifference to the rights of persons with whom the [employees] come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). "[T]he failure to provide proper training may fairly be said to represent a policy for which the [municipal entity] is responsible, and for which the [municipal entity] may be held liable if it actually causes injury." *Id*. at 390. Finally, there must be a direct causal link between a failure to properly train and the alleged constitutional deprivation. *Id*. at 385.

### 1. Defendant Tulare County CPS

As set forth above, Plaintiff cannot maintain a Section 1983 claim against Defendant Tulare County CPS. *See Vance*, 928 F. Supp. at 996; *Devine*, 2006 WL 278590, at *2. However, even if Plaintiff's allegations were construed as against the County of Tulare (the "County"), Plaintiff fails to provide sufficient allegations to state *Monell* claims. For example, she alleges that the County is liable for violating her Fourteenth Amendment rights because it "act[ed] with deliberate indifference in implementing a policy of inadequate training and/or supervision, and/or by failing to train and/or supervise its officers, agents, employees and state actors, in providing the constitutional protections guaranteed to individuals, including those under the Fourth and Fourteenth Amendments, when performing actions related to the investigation of child abuse."

(SAC ¶ 50.) Contrary to these conclusory allegations, however, the alleged "false and fabricated evidence" contained in a single ex parte report submitted by County employees to the family court do not raise a reasonable inference that the County was deliberately indifferent to such transgression or the need to adequately train its employees to avoid it.

Plaintiff's allegations that the County is liable under Section 1983 due to its "policy, custom, or practice of presenting false and fabricated evidence to the family court, in connection with a pending custody dispute, through ex parte written communications" (SAC ¶ 50) is similarly conclusory. She fails to plead any facts demonstrating the existence of any such policy or widespread practice, and instead appears to base the claim on the single incident that happened to her. In addition, it is not clear that allegations regarding the County's "policy, custom, or practice of separating children from their parents without first obtaining a protective custody warrant in the absence of exigent circumstances" bears any relationship to the underlying constitutional deprivation claimed in the case, because there are no facts pleaded showing that any defendant "separated" Y.L. from her parents and took her into "protective custody." *See Castro*, 833 F.3d at 1075 ("The 'first inquiry in any case alleging municipal liability under § 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation.'") (quoting *City of Canton*, 489 U.S. at 385). Plaintiff has therefore not stated a cognizable claim under Section 1983 against Defendant Tulare County CPS nor as reasonably construed against the County of Tulare.

### 2. Defendants Suarez, Menne, and Huerta

Finally, Plaintiff's *Monell* claims against individual Defendants "Lydia Huerta" (Lydia Suarez, Jennifer Menne, and Melanie Huerta also fail. Plaintiff's *Monell* claims against Defendants Suarez, Menne, and Huerta in their individual capacities are best construed as claims for supervisory liability. *See Starr*, 652 F.3d at 1205–06. "A defendant may be held liable as a supervisor under § 1983 if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Henry A. v. Willden*, 678 F.3d 991, 1003-04 (9th Cir. 2012) (quotation marks omitted). Supervisory liability is liability whereby plaintiffs can attempt

to "hold supervisors individually liable in § 1983 suits when culpable action, or inaction, is directly attributed to them." *Starr*, 652 F.3d at 1205. "Supervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (quotation marks omitted).

Plaintiff pleads no facts showing that Defendant Suarez personally participated in the alleged constitutional violation, as mentioned above, nor does she plead facts showing any causal connection to the alleged violation. As to Defendants Menne and Huerta, Plaintiff's basis for her supervisory liability claim is unclear, as she does not specify to which defendant(s) her allegations apply. (*See* SAC ¶¶ 48–51 (pleading "***Defendants***, including by and through its entity CPS, breached its [sic] duties and obligations…") (emphasis added).) To the extent Plaintiff's supervisory liability claim against Defendants Menne and Huerta is based on their participation in the alleged constitutional violation, that claim is duplicative of the first cause of action and not cognizable as a separate claim. To the extent that it is based upon their making or implementation of "policies, procedures, customs, and/or practices" established by Tulare County CPS, those "policies, procedures, customs, and/or practices" are wholly conclusory and are not buttressed by any allegations of fact, as discussed above. *Duenas v. Cty. of Imperial*, No. 14CV-2460-L(KSC), 2015 WL 12656291, at *4 (S.D. Cal. Mar. 9, 2015) (dismissing claim based on allegations of a "speculative list of various policies" without allegations of underlying facts). Moreover, Plaintiff fails to plead any facts that Defendants Menne and/or Huerta had, much less exercised, the right to control others such that liability could attach under *Monell*. *See Monell*, 436 U.S. at 694 n.58.

**C.     Leave to Amend Will Not Be Recommended**

When dismissing claims in a complaint, the Ninth Circuit has stated that "leave to amend should be granted unless the district court determines that the pleading could not possibly be cured by the allegation of other facts." *Bly–Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (internal quotation marks omitted); *Chang v. Chen*, 80 F.3d 1293, 1296 (9th Cir. (9th Cir. 1996). However, once the court has already granted a plaintiff leave to amend a complaint, the court's

13

discretion in determining whether to allow additional opportunities to amend is particularly broad. *Sateriale v. R.J. Reynolds Tobacco Co*., 697 F.3d 777, 794 (9th Cir. 2012) (quoting *Miller v. Yokohama Tire Corp*., 358 F.3d 616,622 (9th Cir. 2004)); *Chodos v. West Publishing Co*., 292 F.3d 992, 1003 (9th Cir. 2002).

The undersigned finds that further amendment of Plaintiff's claims against Defendant Tulare County CPS, her claims against Defendant Lydia Suarez, and her *Monell* claims is not appropriate in this case. First, since claims against Tulare County CPS are cognizable, the Court undersigned that leave to amend these claims would be futile. Next, when dismissing the prior complaints, the undersigned advised Plaintiff that any second amended complaint must be based on a cognizable legal theory that would support her claims and that she must allege facts showing what each named defendant did that led to the deprivation of her constitutional rights. (*See* Docs. 4 & 6.) Plaintiff has been given several opportunities to plead facts sufficient to establish what role the individual defendants had in her alleged constitutional deprivation but has been unable to do so as to Defendant Suarez. Plaintiff has also repeatedly demonstrated that she is unable to marshal facts sufficient to constitute a cognizable *Monell* claim. The addition of more detailed factual allegations or revision of Plaintiff's claims will not cure the defects of her second amended complaint. Thus, the undersigned declines to give any further leave to amend and recommends dismissal of Plaintiff's *Monell*-based Section 1983 claims, her claims against Defendant Child Protective Services of Tulare County, and her claims against Defendant Lydia Suarez.

## IV. CONCLUSION AND RECOMMENDATIONS

For the reasons set forth more fully above, the Court RECOMMENDS that (1) Plaintiff be allowed to proceed on the Section 1983 familial association claim in her first cause of action against Defendants Jennifer Menne and Melanie Huerta; (2) Plaintiff's *Monell*-based Section 1983 claims in her second cause of action be dismissed; and (3) Defendants Lydia Suarez and Child Protective Services of Tulare County be dismissed.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within **twenty-one (21) days** of service of this recommendation, any party may file written objections to these

14

findings and recommendations with the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated:  **November 19, 2020**                    /s/ *Sheila K. Oberto*
                                                                   UNITED STATES MAGISTRATE JUDGE