1

2

3

4

5

6

7

8                          **UNITED STATES DISTRICT COURT**

9                          **EASTERN DISTRICT OF CALIFORNIA**

10

11    CHONG SOOK LIM,                        )    Case No.: 1:20-cv-01049 JLT SKO
                                             )
12                      Plaintiff,           )    ORDER GRANTING DEFENDANTS' MOTION
                                             )    FOR SUMMARY JUDGMENT
13          v.                               )
                                             )    (Doc. 52)
14    COUNTY OF TULARE, et al,               )
                                             )
15                      Defendants.          )

16    _____

17          The plaintiff contends that due to false and fraudulent information provided by the defendants to

18    the Tulare County Family Court, the judge removed her child from her custody and placed her with the

19    father. The defendants have presented substantial evidence that they did not provide any false or

20    fraudulent information to the family court, and, in fact, the judge relied upon a body of evidence

21    unrelated to the defendants when it made its custody determination. Consequently, even assuming the

22    defendants *did* provide false or fraudulent information—and the Court does not find this to be the

23    case—there is no evidence this caused the constitutional deprivation of which the plaintiff complains.

24    Thus, the defendants' motion for summary judgment is **GRANTED**.

25    **I.      Background**[1]

26

27          _____

           [1] The defense submitted a "Separate Statement of Undisputed Material Facts." (Doc. 52-2.)  The facts set
28    forth in this document are identified here as "UMF."
           Though the plaintiff disputes every one of the facts, she fails to support her dispute with evidence.  This
      is the hundreds of pages of records she submitted in connection with her opposition to this motion. (Doc. 60;

                                                   1

The plaintiff and her ex-husband were married for a very short time. (Doc. 7 at ¶ 13). Their union produced a child, Y.L., who was born in 2014. (UMF 1) The determination of the custody arrangements for Y.L were contentious, and the parents made repeated reports to Child Protective Services about the other parent. (UMF 2) Between 2014 and 2018, CPS received at least 25 child abuse referrals related to Y.L. *Id*. Social workers were unable to substantiate any of the referrals[2]. *Id*.

The Tulare County Family Court had been presiding over the custody dispute involving the child for some time. In July 2018, the court held a hearing on the father's recently filed ex parte petition and, apparently, a status conference related to the underlying action. At the hearing, the father's attorney complained about the mother's failure to facilitate visitation between the child and the father during the 30-to-45 days prior. (Doc. 52-3 at 116-126). The father's attorney reported that the mother had repeatedly failed to allow him to visit the child and that he was required to seek the assistance of the Porterville Police Department to visit the week before the hearing. *Id*. at 119-120. Due to previous claims by the mother that the father had sexually abused the child, the father had three adults present during the two-hour visit. *Id*. Despite this, the mother claimed that the father had sexually abused the child at the visit. *Id*.

At some point before the July hearing, the family court judge appointed psychologist, Dr. Engein, to evaluate the situation and to make a custody recommendation.[3] At the July hearing, the court indicated it had reviewed Dr. Engein's three reports and expressed frustration with the plaintiff's conduct. (Doc. 52-3 at 121, 123) The Court noted that Dr. Engein reported that "complaints to authority agencies such as CPS or the police for unwarranted, unfounded accusations are, in fact, examples of alienation process"[4] that the plaintiff was conducting. *Id*. at 121. Because counsel had not had the

---

Doc. 60-1.) None of the pages are authenticated. Nearly all contain handwritten notes, presumably, made by the plaintiff. The plaintiff fails to indicate which documents she contends support that a dispute exists as to any undisputed material fact. The Court has examined each document and finds that nearly all have no bearing on the issues presented in this litigation.

    Along these lines, the plaintiff's opposition to the motion consists, in essence, of a condemnation of the determinations made throughout her history with the child welfare agency and its social workers.  In doing so, she does not address the limited nature of the issues remaining in this litigation.

[2] Some referrals did not meet the definition of child abuse, and some were duplicates. *Id*.

[3] Though exactly what Dr. Engein did to conduct his evaluation is unclear, it appears that, at a minimum, he interviewed the child and father together and the mother and child together. (Doc. 52-3 at 56-57)

[4] The family court also noted that the father had been the subject of court actions as a juvenile which related to the father having been accused of molesting and convicted of molesting his sisters when he was a minor. (Doc.

opportunity to review Dr. Engein's reports, the court continued the matter to September 2018. Reltaed to its concern over the mother's continued conduct in making baseless child abuse claims—as documented by Dr. Engein--the court also ordered a "limited investigation by Family Court Services regarding child welfare services and Porterville Police Department." *Id*. at 92.

When the parties reconvened in September 2018, the family court judge set an evidentiary hearing and awarded temporary custody of Y.L. to her father pending that hearing. UMF 4. The family court first noted that since the last hearing, the mother had made yet another claim of sexual abuse of the child by the father. (Doc. 52-3 at 57). The family court also read into the record portions of the Dr. Engein report. *Id*. The Court read that,

> . . . the focus of [the mother's] discussion [ ] has been about father being a child molester. Mother concludes that in spite of the medical evaluations that are not consistent with child molest that they, in fact, document that the father must be touching the child in some way to cause the irritation. This is an example of mother's unwillingness to change her prejudgment entertaining the new medical information.

*Id*. at 58. The court continued,

> I would also note that in this report, which was a month before yet more sexual abuse allegations by the mother, is the comment by the doctor: "The complaints to authority agencies such as CPS or the police for unwarranted, unfounded accusations are, in fact, examples of alienation process. They adversely affect the child emotionally and put into question her attitude of love and bonding with both of her parents.
>     "If either parent is unable to control and desist, primary custody needs to be assigned to the cooperating parent and whether parent assigned to agency-supervised visits with more individual counseling."

The family court recognized that the child reported to doctors and social workers that her father had touched her sexually, but the court determined that the child's statement were unreliable and cited to a January 27, 2017 social worker report, which concluded that the child appeared to have been coached.[5] *Id*. at 59-60. In doing so, the family court did not identify the social worker who wrote the report. (Doc. 52-3 at 25-26) However, the plaintiff admitted at her deposition that this report was not authored by either defendant in this case. (Doc. 63-2 at 6-7)

---

52-3 at 19, 121-122; Doc. 60 at 46) Apparently, the father's mother obtained a restraining order to keep him from the girls. (Doc. 52-3 at 121-122)
[5] The Court has not been provided a social worker report dated January 27, 2017 and the defendants report that the agency did not provide any such report. Presumably, the report was provided by one of the parents because, except for the agency only the parents and the juvenile court would have copies of social worker reports.

The January 2017 referral, to which the court referred when issuing its temporary custody orders, arose after the child reported to her pediatrician that her father had molested her. UMF 3 The investigating social worker Maria Arredondo determined that,

"the child did not show any signs of anxiety or fear when talking about her father", [she] reported that she likes visiting her father, that the father touches her bottom to assist her with going to the restroom, and "the child made it clear that her mother was telling her to say things about her father" in connection with the sexual abuse allegation.

UMF 3.

In issuing the temporary custody orders and setting the evidentiary hearing, the Family Court did not refer to a statement or report from either defendant. The court noted with obvious exasperation that it had learned that the plaintiff had made a new allegation of sexual abuse in July 2018—after the initial hearing on the ex parte petition. In large part, the court issued the custody determination based, at least in part, on the judge's finding that the plaintiff had made repeated unfounded reports alleging sexual abuse of Y.L. by her father. UMF 4.

## II.    Legal Standards for Summary Judgment

The "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In addition, Rule 56 allows a court to grant summary adjudication, or partial summary judgment, when there is no genuine issue of material fact as to a particular claim or portion of that claim. Fed. R. Civ. P. 56(a); *see also Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 769 n.3 (9th Cir. 1981) ("Rule 56 authorizes a summary adjudication that will often fall short of a final determination, even of a single claim . . .") (internal quotation marks, citation omitted). The standards that apply on a motion for summary judgment and a motion for summary adjudication are the same. *See* Fed. R. Civ. P. 56 (a), (c); *Mora v. Chem-Tronics*, 16 F. Supp. 2d 1192, 1200 (S.D. Cal. 1998).

Summary judgment, or summary adjudication, should be entered "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of

proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party bears the "initial responsibility" of demonstrating the absence of a genuine issue of material fact.  *Id.,* 477 U.S. at 323. An issue of fact is genuine only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party, while a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Wool v. Tandem Computers, Inc.*, 818 F.2d 1422, 1436 (9th Cir. 1987).  A party demonstrates summary adjudication of a claim is appropriate by "informing the district court of the basis of its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323 (quoting Fed. R. Civ. P. 56(c)).

If the moving party meets its initial burden, the burden then shifts to the opposing party to present specific facts that show there is a genuine issue of a material fact.  Fed R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 586.  An opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 587.  The party is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that a factual dispute exits.  *Id.* at 586 n.11; Fed. R. Civ. P. 56(c).  Further, the opposing party is not required to establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Electrical Serv., Inc. v. Pacific Elec. Contractors Assoc.*, 809 F.2d 626, 630 (9th Cir. 1987).  However, "failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

The Court must apply standards consistent with Rule 56 to determine whether the moving party demonstrated there is no genuine issue of material fact and judgment is appropriate as a matter of law.  *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993).  In resolving a motion for summary judgment, the Court can only consider admissible evidence.  *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) (citing Fed. R. Civ. P. 56(e); *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988)).  Further, evidence must be viewed "in the light most favorable to the nonmoving party" and "all justifiable inferences" must be drawn in favor of the nonmoving party.

1    *Orr*, 285 F.3d at 772; *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

2    **III.    Discussion and Analysis**

3        In determining the motion in this case, it is as important to acknowledge what this case is *not*

4 about as it is to discuss what it *is* about. As terrible as it sounds, this case is not about whether the father

5 molested the child. This case is not about whether the social workers properly determined the outcome

6 of any child abuse referral. This case is also not about whether the family court made the correct

7 decision when it determined the child's custody status. This case is *only* about whether the defendants

8 provided false or fraudulent information to the family court, which resulted in a violation of the

9 plaintiff's right to familial association with her child.[6]

10        **A.    Claims arising under § 1983**

11        Plaintiff seeks to hold the defendants liable for violation of civil rights arising under the first

12 and Fourteenth Amendments to the Constitution of the United States, pursuant to 42 U.S.C. § 1983.

13 (*See* Doc. 38 at 10-28; Case No. 1:19-cv-1125-LJO-JLT, Doc. 1.)  Section 1983 "is a method for

14 vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994).  In

15 relevant part, Section 1983 provides:

16          Every person who, under color of any statute, ordinance, regulation, custom, or usage,
of any State or Territory... subjects, or causes to be subjected, any citizen of the United

17          States or other person within the jurisdiction thereof to the deprivation of any rights,
privileges, or immunities secured by the Constitution and laws, shall be liable to the

18          party injured in an action at law, suit in equity, or other proper proceeding for redress...

19 42 U.S.C. § 1983. To establish a Section 1983 violation, a plaintiff must show (1) deprivation of a

20 constitutional right and (2) a person who committed the alleged violation acted under color of state law.

21 *West v. Atkins*, 487 U.S. 42, 48 (1988); *Williams v. Gorton*, 529 F.2d 668, 670 (9th Cir. 1976).

22        A plaintiff must establish a specific injury was suffered and show a causal relationship between

23 the defendant's conduct and the injury suffered.  *See Rizzo v. Goode*, 423 U.S. 362, 371-72 (1976).  A

24 person deprives another of a right "if he does an affirmative act, participates in another's affirmative

25 acts, or omits to perform an act which he is legally required to do so that it causes the deprivation of

26

27    ------------------------------

   [6] This court has determined previously that these questions are barred by the Rooker-Feldman doctrine (Docs. 8,
9) and has dismissed the action except as it relates to the plaintiff's § 1983 claim for loss of familial association

28 caused by Jennifer Menne and Melanie Huerta. (Doc. 9 at 2) The Court also dismissed the claims against the
other individual defendants and the entity. *Id.*

1    which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).  In other words,

2    "[s]ome culpable action or in action must be attributable to defendants." *See Puckett v. Corcoran*

3    *Prison - CDCR*, 2012 WL 1292573, at *2 (E.D. Cal. Apr. 13, 2012).

4                    1.        There is no evidence that the defendants caused the plaintiff actionable harm

5            "[T]he freedom to enter into and carry on certain intimate or private relationships is a

6    fundamental element of liberty protected by the Bill of Rights." *Board of Directors of Rotary Int'l v.*

7    *Rotary Club*, 481 U.S. 537, 544 (1987).  Courts recognize a constitutionally protected liberty interest in

8    the companionship and society of a parent and child. *Santosky v. Kramer*, 455 U.S. 745, 753 (1982);

9    *see also Troxel v. Granville*, 530 U.S. 57, 65 (2000). Familial association rights are protected by the

10   First and Fourteenth Amendments. *Board of Dir. v. Rotary Club*, 481 U.S. 537, 545 (1987). The

11   standards to establish a violation under the First or the Fourteenth Amendments are the same. *Lee v.*

12   *Cty. of L.A.*, 250 F.3d 668, 86 (9th Cir. 2001). The plaintiff must prove that (1) the defendant official

13   deliberately fabricated evidence and (2) the deliberate fabrication caused the plaintiff's deprivation of

14   liberty. *Patterson v. Miller*, 451 F.Supp.3d 1125, 1152–53 (D. Ariz. 2020), aff'd, No. 20-15860, 2021

15   WL 3743863 (9th Cir. Aug. 24, 2021).

16           The evidence fails to show that the family court received or relied upon any documentation

17   created or provided by the defendants.[7] Though the family court relied on a January 2017 social worker

18   report and the results of child abuse investigation conducted in July 2018, there is no evidence that

19   either defendant wrote the 2017 report or supplied it[8] and no evidence Ms. Menno determined the

20   outcome of the 2018 investigation. Though Menno assisted in the interview of the child in February

21   2017, she conducted no investigation and did not draw any conclusions about the allegations made in

22   the referral (Doc. 52-3 at 7). The assigned social worker documented in the Delivered Service Log her

23

24   ───────────────────────

25   [7] The plaintiff argues that the defendants should have provided the family court with the information that the
     father had molested his own sisters.  However, this was not their role. In any event, the plaintiff was represented
     by counsel in the family court action and her own attorney provided that information to the court and the court
26   acknowledged knowing of it. (Doc. 52-3 at 19, 121-122; Doc. 60 at 46) Moreover, the plaintiff fails to explain
     how begin deprived of a Korean language interpreter during the child abuse referral investigations bears on the
27   issues raised in this litigation.
     [8] As noted, the Court has not been provided a social worker report from January 27, 2017. Though the plaintiff
28   has submitted the Delivered Service Log, there is no entry for this date in the records provided and no evidence
     the family court ever received the DSL.

conclusion that the child "had made statements that . . . lead [the social worker] to believe [the plaintiff] was coaching her child." *Id*. at 112. Ms. Menno never provided any reports to the family court or had any contact with that court, including having no contact with anyone associated with the court or those involved in the investigation ordered by the family court. *Id* at 13. Likewise, Ms. Menno did not have any contact with Dr. Engein and never provided him any information. *Id*. Moreover, Ms. Menno never signed any report related to the plaintiff or her child. *Id.*

In July 2018, Defendant Huerta interviewed the child, in the presence of the plaintiff, who was assisted by Korean translation. (Doc. 52-3 at 18) After hearing the child's report, Ms. Huerta referred the matter to the Porterville Police Department. *Id*. The assigned police officer conducted an interview and found that the child's statement did not warrant further interview by the Child Abuse Response Team. *Id*. at 18.

Before the outcome of the referral was determined, the agency and police department received another report of sexual abuse, which reportedly took place on August 3, 2018. *Id*. at 19-20. Ms. Huerta reviewed the case file, including the past reports of abuse, the father's criminal history, the child's medical records and the interview conducted with the child in February 2017 and determined the July referral was unfounded. (*Id*. at 18-20; UMF46) Even still, other than making an entry into the DSL, Ms. Huerta did not prepare a report or provide it or any other documents to the family court or to anyone associated with it. (Doc. 52-3 at 18-20) She did not have contact with or provide information to Dr. Engein. *Id*. at 21.

On the other hand, the family court investigator contacted Ms. Huerta and asked about the status of the sexual abuse referrals. (Doc. 52-3 at 21; UMF 49-51)) Ms. Huerta recalled her conversation with the investigator:

> I indicated to the mediator that we were going to be closing the referrals as unsubstantiated. I recall being asked if I had any concerns about the child being coached. I indicated that I had concerns based on inconsistent statements Y.L. had made in the past to other social workers, based on the child's terminology used during the CART interview, based on the child's behavior which I found inconsistent with children who are sexually abused, and based on medical records that suggested her medical issues were due to hygiene that the child might be coached; however, I did not tell the investigator that "the child was coached."

(Doc. 52-3 at 21) The information provided by Ms. Huerta to the investigator was authorized by the

Tulare County Local Rules of Court. UMF 52. Though the family court noted that the July 2018 child abuse referral was unfounded, the judge made no other comment about this referral. *(Doc. 52-3 at 57)* Instead, the family court judge relied on the court investigator's report which detailed that, "[on] January 27th, 2017, it was the conclusion of the social worker that the minor child was being coached by the mother." *Id.* at 59-60. Notably, again, the social worker who formed that conclusion was Ms. Arredondo, rather than either of the defendants.

At the September hearing, the father's attorney also reported to the family court that after the initial hearing on the ex parte petition, the plaintiff had also tried to have the child evaluated by Dr. Lisa Miller as well as "two other doctors to try to get them to act on the same false allegations." (Doc. 52-3 at 60-62) The mother's attorney confirmed that this had occurred, but indicted it was only one other doctor besides Dr. Miller. *Id.*

Based on the reports of the court investigator and Dr. Engein, the medical records and the information from counsel, the family court found,

> Family Code Section 3011(b) requires as to allegations of sexual abuse that those allegations be supported by substantial and independent corroboration.
>     We have absolutely no corroboration. We have a mental health professional, who was hired by the parties for the purposes of conducting a psychiatric evaluation of the parties, who had significant concern regarding mother being convinced that the child has been molested by the father.
> We have a child barely out of her toddler years who has now been subjected to rape evaluation, multiple meetings with Child Welfare Services, with law enforcement, with absolutely no corroboration so that I don't -- I don't know that I have any comfort in saying that mother believes this to be true and that these aren't false allegations, but she's not going to stop. It's clear she's not going to stop.

(Doc. 52-3 at 63-64) The court confirmed it was aware of the child's medical records and the child's statements about the sexual abuse. *Id.* at 64-65. Moreover, the plaintiff confirmed at her deposition that she had filed the child's medical records related to the sexual abuse allegations. (Doc. 63-2 at 4) The court noted,

> There is no physical corroboration of your client's allegations. There are concerns regarding her coaching the child.
>
> [¶]
>
> So having in mind that the Court can consider the statement of one witness in support of an allegation, if that witness is to be believed, there's certainly no circumstances under which this was presented which would give the Court any confidence in simple believing the word of the child as opposed to medical evidence that provides no corroboration.

It is a substantial independent corroboration that is the burden under Family Code Section 3011(b) as to these types of allegations. And for good reason.

[¶]

And the Court's concern is that this is not going to stop. It didn't stop after the last hearing. It hasn't stopped after repeated reports where there's been absolutely nothing to substantiate the allegations.

*Id*. at 64-65. The court observed,

No. She has not specifically been ordered not to make false allegations of sexual abuse or not to take the child to multiple doctors without father being aware of any of that – despite the order of the joint legal custody -- in order to build a case of sexual assault against the father. No, those orders are [ ] have not been made. So whether these allegations are being made in a vindictive manner or being made because mother absolutely believes that this did happen makes no difference to the Court. The child of concern has the psychiatrist was concerned regarding the effects on the child of these repeated exposures.

[¶]

And certainly that behavior has gone on since the report from the psychiatrist.

*Id*. at 65-66.

Once again, there is no evidence that either defendant provided any reports to the Family Court. Indeed, there is no evidence that Ms. Menne provided any information whatsoever to anyone connected to the child custody matter. Though Ms. Huerta answered the questions of the court investigator, nothing she said could be construed as false or fraudulent evidence. Instead, her comments simply recited her impressions of the information gathered, and her comments were couched in terms of Ms. Huerta's "concerns" rather than assertions of fact. Though the plaintiff clearly believes that Ms. Huerta's concerns were unfounded, is disappointed in the results of the various child abuse reports and disagrees with them, this does not mean that the statements made by Ms. Huerta were false or that she violated the plaintiff's rights when she made them.

The plaintiff contends also that the defendants failed to provide the family court information which would have been helpful in the custody determination. She does not provide any authority for the proposition that they were obligated by law to do this. *See e.g., Raley v. Ylst*, 470 F.3d 792, 804 (9th Cir. 2006). In any event, she asserts that the defendants should have provided the family court with the information that the father had molested his own sisters.  However, the plaintiff was represented by

counsel in the family court action and her own attorney provided this information to the court and the court acknowledged knowing of it. (Doc. 52-3 at 19, 121-122; Doc. 60 at 46) Moreover, in her determination of the July 2018 child abuse referral, Ms. Huerta specifically reviewed and documented her review of this information. It wasn't a situation in which the social worker hid this information from the court. Rather, despite the family court being aware of this information, there is no indication the court investigator investigated this criminal history but, it is clear that the investigator did not seek out this information from either defendant.

Finally, the plaintiff fails to explain how being deprived of a Korean language interpreter during the child abuse referral investigations bears on the issues raised in this litigation. As noted above, the plaintiff was represented by counsel in the custody action and, if the lack of an interpreter was truly important, the plaintiff has failed to explain why she did not present this evidence to the family court through her attorney.  She was best suited to know the extent to which the lack of an interpreter bore on her actions or to the statements attributed to her. Even now, she fails to explain how this information could have changed the mind of the family court judge. The judge repeatedly stated how dismayed he was by the plaintiff's conduct given how detrimental it was to the child to be subjected to repeated child abuse investigations and sexual abuse examinations, even assuming the plaintiff's motives were pure.

The family court relied upon many pieces of evidence when it determined the temporary custody of the child. Ms. Huerta's statement was just one portion of the court investigator's report, which also included information from the Porterville Police Department.  Indeed, the court appeared to be very persuaded by the evaluation of Dr. Engein and quoted his reports at length. Given all of this evidence, the Court finds there is no genuine dispute of material facts that the defendants did not present any false or fraudulent information to the family court. Consequently, the Court finds the defendants are entitled to summary judgment.

### 2.    Qualified immunity

Because the Court finds the defendants did not violate a constitutional right, the Court declines to consider whether they would, otherwise, be entitled to the protections of qualified immunity. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001), overruled in part by *Pearson v. Callahan,* 555 U.S. 223

2009).

**V.    Conclusion and Order**

Given the lack of conflicting evidence presented by the parties related to the circumstances of the family court action, which resulted in the child being placed in the father's temporary custody, the Court finds the defendants have met their burden of showing an absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.  The plaintiff has failed to present evidence demonstrating a genuine dispute of material fact. Thus, the Court **ORDERS** the motion for summary judgment (Doc. 52) is **GRANTED**.

As a result of the above, all other pending motions are **DENIED** as moot and the Clerk of Court is directed to **CLOSE THIS CASE**.

IT IS SO ORDERED.

Dated:    **October 20, 2022**

UNITED STATES DISTRICT JUDGE

12